UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, )<br>)<br>*Petitioners*, )<br>)<br>v. )<br>)<br>ANDREW HOLSCHEN, )<br>)<br>*Respondent*. ) | Case No. 4:23-cv-00823 |

### REPLY IN SUPPORT OF MOTION TO DISMISS

Verizon does not claim that either its petition to this Court or Mr. Holschen's arbitration proceeding constitutes a "class action" that could be filed in, or removed to, federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). It further does not dispute that Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, does not create or expand jurisdiction, including jurisdiction under CAFA. It nonetheless insists that although Mr. Holschen could not have filed his collective arbitration in federal court, and even though Verizon could not have removed that arbitration to federal court, the FAA's "look through" doctrine provides this Court jurisdiction over its pending petition. That, unsurprisingly, is incorrect. The "look through" doctrine authorizes courts to decide FAA petitions only if the court would have had jurisdiction over the "whole controversy *as framed by the parties*," not as the controversy could have been framed if it had been litigated differently. *Vaden v. Discover Bank*, 556 U.S. 49, 66-67 (2009) (emphasis added); *see also CMH Homes, Inc. v. Goodner*, 729 F.3d 832, 837 (8th Cir. 2013) (courts must "look through *to the underlying action* to determine whether it could be litigated in federal court" (emphasis added)). Here, that means asking whether Mr. Holschen's collective arbitration could have been filed in, or removed to, federal court. Because Verizon admits it could not, the petition to compel arbitration must be dismissed.

## THE "LOOK THROUGH" DOCTRINE REQUIRES TAKING THE DISPUTE AS IT HAS ACTUALLY BEEN FRAMED BY THE PARTIES.

In *Vaden*, the Supreme Court "approve[d] the 'look through' approach to this extent: A federal court may 'look through' a § 4 petition to determine whether it is predicated on *an action* that 'arises under' federal law." 556 U.S. at 62 (emphasis added); *see also* 9 U.S.C. § 4 (authorizing petition to compel arbitration in U.S. district court "which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties"). A Section 4 petition is predicated on an action falling within federal question jurisdiction only if "the entire, *actual* 'controversy between the parties,' *as they have framed it*, could be litigated in federal court." *Vaden*, 556 U.S. at 66 (emphasis added). It is not enough, the Supreme Court warned, that there might have been federal jurisdiction had the case been framed and litigated differently. *Ibid*. Instead, what "define[s] the parties' controversy" is the "actual litigation" precipitating the Section 4 petition. *Id*. at 68.

The facts of *Vaden* illustrate the point. There, Discover Bank "sued its cardholder, Vaden, in a Maryland state court to recover arrearages," asserting exclusively state-law claims. *Id*. at 54. Vaden, in turn, "filed several counterclaims" alleging that Discover's "finance charges, interest, and late fees violated Maryland's credit laws." *Ibid*. Discover then petitioned in federal court to compel arbitration under Section 4 of the FAA. *Id*. at 54-55. Recognizing the need for a source of jurisdiction independent of the FAA itself, Discover asserted federal question jurisdiction on the ground that the counterclaims were completely preempted by federal banking law and, hence, qualified as federal claims for removal purposes. *Id*. at 55.

Applying a limited "look through" test, the Supreme Court ordered the FAA petition dismissed. *Id*. at 66-72. The Court did not doubt that a federal court would have had federal question jurisdiction over the counterclaims had they been filed independently. For example, a

2

federal court would have had jurisdiction over Vaden's challenges to Discover Bank's fees if Vaden had filed them as an independent suit, or if Discover had included a request for declaratory judgment regarding the lawfulness of the fees in its initial complaint. *Id*. at 67. Nor did the Court deny that one could therefore say the "controversy between the parties" involved a federal question in that sense. *Ibid*. But the Court held that this was not the sense in which that phrase is used in the FAA. Instead, the Court emphasized that the FAA refers to "*the* controversy between the parties," *id*. at 68 (quoting 9 U.S.C. § 4) (emphasis in original), which the Court took to mean the controversy "as framed by the parties," *id*. at 67. That meant asking whether a court would have jurisdiction over the parties' actual litigation in its actual procedural posture. Because the federal question arose only in a counterclaim, and because federal question jurisdiction cannot be founded on the federal nature of a counterclaim, that meant federal courts would lack jurisdiction over the subject matter of the relevant "controversy between the parties" in *Vaden*, requiring dismissal of the FAA petition. *Id.* at 70.

The Eighth Circuit subsequently extended *Vaden*'s "look through" approach to deciding the amount-in-controversy in diversity cases, but has declined to apply it to resolve whether the parties to the action are diverse. *See CHM Homes, Inc. v. Goodner*, 729 F.3d 832, 835-36 (8th Cir. 2013); *Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 491 (8th Cir. 2010). It has not ruled on whether the "look through" approach applies to invocations of jurisdiction under CAFA. Nonetheless, the Eighth Circuit has confirmed that when the "look through" doctrine does apply, it requires "look[ing] through *to the underlying action* to determine whether *it* could be litigated in federal court." *CHM Homes*, 729 F.3d at 837 (emphasis added). Accordingly, in *CMH Homes*, the Eighth Circuit found jurisdiction only because, unlike in this case, the "entire, actual

3

controversy between the [consumers] and the companies, as they have framed it, [was] the [consumers'] putative class action lawsuit in Arkansas state court." *Id.* at 838.

This is consistent with the general approach courts take to CAFA jurisdiction generally, which hinges on the nature of the controversy as framed by the plaintiff's complaint, not on whether there would have been jurisdiction if the plaintiff had framed her case differently. *See Northport Health Servs.*, 605 F.3d at 490-91 (considering "traditional principles of diversity jurisdiction" in applying the "look through" doctrine to determine diversity jurisdiction under 28 U.S.C. § 1332(a)). For example, in deciding whether a case involves enough plaintiffs or meets the amount in controversy requirement, courts look to the "operative complaint at the time of removal." *Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783, 789-90 (8th Cir. 2012); *see also, e.g., Cova v. Charter Commc'ns, Inc.*, 2016 WL 4368100, at *2 (E.D. Mo. Aug. 16, 2016). In *Hargis*, that meant there was CAFA jurisdiction even though the plaintiff could have filed a class action complaint (and, indeed, tried to file an amended class action complaint) limiting the scope of the class action in a way that would have failed to meet CAFA's numerosity or amount-in-controversy requirements. 674 F.3d at 789-90. Conversely, courts have held that when a plaintiff seeks a narrow class, the amount-in-controversy and numerosity requirements must be met with respect to the class as defined in the complaint, even if the controversy between the parties could have been framed more broadly (*e.g.*, to include a nationwide rather than a statewide class). *Ibid.*; *see, e.g., Smith v. Scottsdale Ins. Co.*, 2022 WL 17252203, at *2 (W.D. Mo. Oct. 3, 2022) (finding no CAFA jurisdiction even though plaintiff could have included claims about other insurance policies that would have satisfied CAFA's amount-in-controversy requirement, explaining that because "a plaintiff is master of the Complaint," he "can define his class in a manner that deprives the court of jurisdiction under CAFA").

4

### A. This Court Has No "Look-Through" Jurisdiction Under CAFA.

Even assuming that the "look-through" approach applies to CAFA jurisdiction, there would be no jurisdiction here. While the "entire controversy" may include the claims of absent consumers for whom Mr. Holschen seeks relief in his requested collective arbitration,[1] the "entire, *actual* 'controversy between the parties,' *as they have framed it,*" *Vaden*, 556 U.S. at 66 (emphasis added), could not have been litigated in federal court under CAFA for the reasons given in the Motion to Dismiss: The controversy as framed by the parties involves a request for a collective *arbitration*, a framing of the controversy that does not give rise to CAFA jurisdiction. Because no federal court would have jurisdiction over the putative collective arbitration under CAFA, this Court could have jurisdiction over Verizon's Section 4 petition only if the FAA *expanded* the jurisdiction CAFA otherwise provides. But the Supreme Court has been abundantly clear that it does not. *See id.* at 59 (the FAA "bestows no federal jurisdiction") (quotation marks omitted; cleaned up); *id*. at 59 n.9 (noting that "when Congress wants to expand federal-court jurisdiction, it knows how to do so clearly and unequivocally") (quotation marks omitted; cleaned up).

Verizon's contrary argument depends on exactly the kind of re-imagining of the controversy between the parties that *Vaden* forbids. CAFA does not supply an "independent basis" of jurisdiction over Mr. Holschen's collective arbitration any more than if he had asserted his allegations in counterclaims in a suit by Verizon in state court. *See Vaden*, 556 U.S. at 68-70; *see also Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1750-51 (2019) ("CAFA's removal provision" does not permit "a third-party counterclaim defendant to remove"). Verizon argues that the "substantive conflict" between the parties involves a class of consumers collectively seeking

---

[1] Mr. Holschen does not resist jurisdiction on the ground that the relevant controversy is between him individually and Verizon. *Contra* Opp. 6.

more than $5 million. Opp. 6. However, as the Motion to Dismiss explained, those facts in themselves do not establish jurisdiction under CAFA—the statute also requires that this substantive conflict give rise to a particular form of litigation, namely a class action suit in court. Mem. in Support of MTD 9-12. Accordingly, even if Verizon were permitted to abstract away the arbitration aspects of the controversy, it can only establish CAFA jurisdiction by hypothesizing that this substantive conflict *could have* given rise to a class action suit in court, in the same way that the *Vaden* plaintiff's objections to Discover Bank's fees *could have* been litigated in an independent action rather than through a counterclaim. That kind of thinking might be persuasive to the dissenters in *Vaden*, *see* 556 U.S. at 72-73, but the Supreme Court majority unambiguously rejected it: "Whether one might imagine a federal-question suit involving the parties' disagreement over Discover's charges is beside the point." *Id*. at 67. The statute, the Court explained, "does not give § 4 petitioners license to recharacterize an existing controversy, or manufacture a new controversy, in an effort to obtain a federal court's aid in compelling arbitration." *Id*. at 68. "Perhaps events could have unfolded differently, but § 4 does not invite federal courts to dream up counterfactuals when actual litigation has defined the parties' controversy." *Ibid*.

Here, the "actual litigation" that "defined the parties' controversy" is an arbitration over which no federal court has jurisdiction. Verizon cannot look past that essential fact on the pretense of looking through the Section 4 petition.

### B. Verizon's Reliance On *Del Webb* Is Misplaced.

The only case Verizon can cite arguably applying a different approach is *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867 (4th Cir. 2016). Opp. 2-3, 8-10.[2] Verizon argues that

---

[2] As noted, the Eighth Circuit in *CMH Homes* looked through to the "underlying action" between the parties, which was a class action in state court. 729 F.3d at 837; *supra* pp.3-4.

in that case, "the Fourth Circuit held that, looking through the allegations of a petition to compel bilateral (rather than class) arbitration, the Class Action Fairness Act, 28 U.S.C. § 1132(d), supplied the required jurisdiction." Opp. 2-3. But that out-of-circuit case held no such thing. The actual basis for the decision, and therefore its only holding, was that the district court had jurisdiction to hear an FAA Section 4 petition under the normal diversity statute because, looking through to the substance of the dispute, the amount in controversy exceeded $75,000 and the parties were completely diverse. *Del Webb*, 817 F.3d at 871. The Fourth Circuit's musings about whether CAFA might also provide a basis of jurisdiction is dicta, not binding even to district courts in that circuit. *See Dahle v. Kijakazi*, 62 F.4th 424, 428 (8th Cir. 2023) (even dicta from the Supreme Court "is not binding").

Nor is the dicta the product of significant analysis or briefing that could make it persuasive authority in this case. The claimants in *Del Webb* (wrongly) accepted the petitioner's recharacterization of the underlying dispute as a class action filed in court and argued only that such a hypothetical case would have fallen within CAFA's local controversy exception. *See Del Webb*, 817 F.3d at 872 n.2 (explaining that claimants argued only "that the district court should have dismissed the [FAA § 4] Petition under an exception to CAFA"); Brief of Respondents, *Del Webb Communities, Inc. v. Carlson*, 2015 WL 4043273, at *12-14 (4th Cir. June 29, 2015) (exclusively raising local controversy exception). The Fourth Circuit thus confronted, and resolved, none of the arguments raised in this case. This kind of "unrefined disposition" constitutes a "drive-by jurisdictional ruling" that "should be accorded no precedential effect." *See Wilkins v. United States*, 598 U.S. 152, 160-61 (2023) (quotation marks omitted; cleaned up).

Verizon would like this Court to think ruling against the company will "create a perverse incentive for claimants to forum shop for arbitral forums to file a class action prohibited under

7

their agreement." Opp. 9. Verizon's complaint about forum shopping is particularly rich given that the company precluded Mr. Holschen from filing a CAFA-removable class action in a court through its consumer contract. Even if forum shopping were a real concern, there is no need to distort the "look through" doctrine to find jurisdiction in this case. Verizon ignores that it has a ready remedy in a state court of competent jurisdiction. Again, the "FAA requires those courts, too, to honor arbitration agreements; and we have long recognized their 'prominent role' in arbitral enforcement." *Badgerow v. Walters*, 142 S. Ct. 1310, 1316 (2022) (quoting *Vaden*, 556 U.S. at 59).

## CONCLUSION

For the reasons set forth above and in the Memorandum in Support of the Motion to Dismiss, this Court should dismiss the petition for lack of subject-matter jurisdiction.

September 25, 2023                                   Respectfully submitted,

                                                                           */s/ Daniel Woofter*

Evan Murphy                                          Kevin K. Russell
MURPHY ADVOCATES LLC                                 Daniel Woofter
1600 Broadway, Suite 1600                            GOLDSTEIN, RUSSELL & WOOFTER LLC
Denver, CO 80202                                     1701 Pennsylvania Ave., NW, Suite 200
(314) 753-5212                                       Washington, DC 20006
evan@murphyadvocates.com                             (202) 240-8433
                                                     krussell@goldsteinrussell.com
                                                     dhwoofter@goldsteinrussell.com

*Attorneys for Respondent Andrew Holschen*